FILED

2010 Jul-12  PM 06:14
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| JESSICA H. FEENEY, on behalf of herself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:10-CV-00844-CLS |
| v. | ) ) ) | Judge C. Lynwood Smith, Jr. |
| WALGREEN HEALTH INITIATIVES, INC. and KELLY SERVICES, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANT KELLY SERVICES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Gerald L. Maatman, Jr.
Brett C. Bartlett
Steven J. Pearlman
Brandon L. Spurlock
(appearing *pro hac vice*)
Seyfarth Shaw LLP
131 South Dearborn Street
Suite 2400
Chicago, IL 60603
312-460-5000

Thomas L. Oliver, II
Bricker S. Daughtry
Carr Allison PC
100 Vestavia Parkway
Suite 200
Birmingham, AL 35216
205-949-2914

*Counsel for Defendant Kelly Services, Inc.*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................1

STATEMENT OF UNDISPUTED MATERIAL FACTS ........................................3

    I.    The Parties..................................................................................3

           A.    Defendant Kelly Services, Inc. .................................................3

           B.    Plaintiff Jessica H. Feeney ......................................................3

    II.    Individuals Who Have Consented To Participate In This Action
           And Their Former Employment With KSI ..........................................4

           A.    Tina Bryan..............................................................................4

           B.    Ashley Thirkill .......................................................................4

    III.    KSI's Assignment Of CSRs To Call Center Facilities In Muscle
           Shoals, Alabama And Orlando, Florida ...........................................5

    IV.    KSI's Timekeeping Policies And Procedures .....................................6

ARGUMENT ................................................................................................9

    I.    Standard Of Review ........................................................................9

    II.    KSI Is Entitled To Summary Judgment On Plaintiff's FLSA
           Claims.......................................................................................10

           A.    Plaintiff's FLSA Claims Are Barred By The Applicable
                 Two-Year Statute Of Limitations ............................................10

           B.    The Three-Year Statute of Limitations Does Not Apply
                 Because Plaintiff Cannot Establish That KSI Willfully
                 Violated The FLSA ................................................................11

    III.    Plaintiff's "Outrage" Claim Fails As A Matter Of Law ....................15

CONCLUSION .............................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**F**EDERAL **C**ASES

*Allen v. Bd. of Public Ed.,*
  495 F.3d 1306 (11th Cir. 2007) ...........................................................11

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 322 (1986)......................................................................9

*Fitzpatrick v. City of Atl.,*
  2 F.3d 1112 (11th Cir. 1993) ................................................................9

*Frew v. Tolt Techs. Serv. Group, LLC*,
  Case No. 09-cv-49, 2010 U.S. Dist. LEXIS 11991
  (M.D. Fla. Feb. 10, 2010) .....................................................................13

*Grayson v. K Mart Corp.,*
  79 F.3d 1086 (11th Cir. 1996) ..............................................................10

*Horne v. Russell County Comm'n,*
  379 F. Supp. 2d 1305 (M.D. Ala. 2005).................................................16

*Kuebel v. Black & Decker (U.S.) Inc.*,
  Case No. 08-CV-6020, 2010 U.S. Dist. LEXIS 46533
  (W.D.N.Y., May 12, 2010)...............................................................13, 14

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992)...............................................................................10

*McLaughlin v. Richland Shoe Co.*,
  486 U.S. 128 (1988)...............................................................................11

*McLaughlin v. Richland Shoe Co.*,
  486 U.S. 128 (1988)...............................................................................11

*Newton v. City of Henderson*,
  47 F.3d 746 (5th Cir. 1995) ..................................................................13

*Reich v. Department of Cons. and Natural Res., State of Ala.,*
  28 F.3d 1076 (11th Cir. 1994) ..............................................................12

*Saxton v. Young*,
   479 F. Supp. 2d 1243 (N.D. Ala. 2007)..........................................10, 11, 12, 13

*Webb v. Athens Newspapers, Inc.*,
   999 F. Supp. 1464 (11th Cir. 1998) ...................................................................9

*Wiggins v. Risk Enter. Mgmt. Ltd.*,
   14 F. Supp. 2d 1279 (M.D. Ala. 1998)............................................................15

**STATE CASES**

*American Road Serv. v. Inmon*,
   394 So. 2d 361 (Ala.1980)......................................................................15, 16

*Moore v. Spiller Assoc. Furniture, Inc.*,
   598 So. 2d 835 (Ala. 1992).............................................................................15

*Thomas v. BSE Indus. Contractors, Inc.*,
   624 So. 2d 1041 (Ala. 1993).....................................................................15, 16

**FEDERAL STATUTES**

29 U.S.C. § 255(a) ......................................................................................10, 11, 12

**RULES**

FED. R. CIV. P. 56(c).......................................................................................9

Defendant Kelly Services, Inc. ("KSI") respectfully submits this memorandum of law in support of its motion for summary judgment on Plaintiff Jessica H. Feeney's ("Plaintiff") Complaint in its entirety.

## INTRODUCTION

This is a putative collective action under the Fair Labor Standards Act ("FLSA") against KSI and Walgreen Health Initiatives, Inc. ("WHI"). KSI employed Plaintiff as a temporary employee for approximately four months, from December 2007 through March 2008, and assigned her to work as a Customer Service Representative ("CSR") at a WHI facility in Muscle Shoals, Alabama.

Plaintiff alleges that KSI violated the FLSA by failing to pay her and purported similarly situated CSRs overtime premiums for work that they claim they performed in excess of forty hours per workweek but did not record; *i.e.*, for alleged off-the-clock work. Additionally, Plaintiff claims that this alleged FLSA violation, which KSI denies, entitles her to relief based on the tort of outrage. Plaintiff's FLSA and tort claims fail as a matter of law.

*First*, the irrefutable record evidence establishes that Plaintiff's FLSA claim is time-barred. Plaintiff's claim is barred by the two-year statute of limitations that applies to FLSA claims because Plaintiff filed her Complaint on April 5, 2010, and yet her employment with KSI ended on March 22, 2008 – over two years earlier. Likewise, the claims of the two individuals who opted-into this lawsuit, Tina

Bryan and Ashley Thirkill, are barred because their employment with KSI ended more than two years before they filed their opt-in consent forms.  Indeed, *all* remaining alleged members of the putative class ended their employment with KSI no later than June 14, 2008, and thus needed to file an opt-in consent form by June 14, 2010 for their claims to be actionable.  None did so.

Moreover, Plaintiff cannot extend the applicable two-year statute of limitations for an additional year based on a theory that KSI willfully violated the FLSA.  The irrefutable record evidence establishes that KSI took multiple affirmative steps to comply with the FLSA, all of which refute any conceivable allegations that KSI willfully violated the law.  Among other things, KSI: (1) implemented a policy prohibiting off-the-clock work; (2) instructed its CSRs verbally and in writing to accurately record all hours that they worked on their timecards; and (3) compensated its CSRs for all of the time that they reported. Additionally, KSI relied on its CSRs' self-prepared timecards – which the CSRs signed to confirm their accuracy – because no KSI supervisors were on-site at WHI's facilities.  Furthermore, the record evidence establishes that KSI compensated Plaintiff, Bryan and Thirkill at the applicable overtime premium rate for all hours they reported over 40 per week.

*Second*, Plaintiff's "outrage" claim fails because Plaintiff cannot carry her heavy burden of establishing that KSI intentionally or recklessly caused her severe

emotional distress through extreme and outrageous conduct.  Plaintiff has not plead – and cannot possibly produce evidence of – facts establishing that KSI's actions were "atrocious and utterly intolerable in a civilized society."

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### I.   The Parties

#### A.   Defendant Kelly Services, Inc.

(**1.**)   KSI provides staffing, outsourcing, and consulting services to third-party client companies.  (KSI's Corporate Disclosure Statement Pursuant to Local Rule 3.4, Docket No. 16.)

#### B.   Plaintiff Jessica H. Feeney

(**2.**)   KSI hired Plaintiff in December 2007, and assigned her to work as a CSR at WHI's call center in Muscle Shoals, Alabama.  (Declaration of Johnny Deaton ("Deaton Decl.") ¶ 11; WHI's Answer, Docket No. 8 at ¶ 5.)[1]  From March 23, 2008, until December 29, 2009, Plaintiff was WHI's sole and direct employee (*i.e.*, KSI no longer employed Plaintiff as of that date).  (*Id.*)

(**3.**)   During her employment with KSI, Plaintiff was paid for all time she recorded – including overtime hours at the applicable overtime premium rate. (Deaton Decl. ¶ 18, Exhibits A-2 and A-5 at 1.)

---

[1] Johnny Deaton's declaration is attached to this memorandum of law as Exhibit A, and the exhibits attached to his declaration are labeled Exhibits A-1 through A-5.  Cheryl Courier's declaration is attached as Exhibit B, and the exhibits attached to her declaration are labeled Exhibits B-1 and B-2.

## II.   Individuals Who Have Consented To Participate In This Action And Their Former Employment With KSI

### A.   Tina Bryan

(**4.**)   Bryan opted-into this lawsuit on May 12, 2010.  (Docket No. 14.) KSI employed Bryan from November 2007 until April 8, 2008, and assigned her to work as a CSR at WHI's call center in Muscle Shoals, Alabama during that period. (Deaton Decl. ¶ 12.)  On April 8, 2009, Bryan became a direct employee of WHI. (*Id.*)

(**5.**)   During her employment with KSI, Bryan was paid for all time she recorded, including overtime hours at the applicable overtime premium rate. (Deaton Decl. ¶ 18, Exhibit A-3 and A-5 at 2.)

### B.   Ashley Thirkill

(**6.**)   Thirkill opted-into this lawsuit on June 3, 2010.  (Docket No. 17.) KSI employed Thirkill from November 2007 until March 22, 2008, and assigned her to work at WHI's call center in Muscle Shoals, Alabama during that period. (Deaton Decl. ¶ 13.)  On March 23, 2008, she became a direct employee of WHI. (*Id.*)

(**7.**)   During her employment with KSI, Plaintiff was paid for all time she recorded – including overtime hours at the applicable overtime premium rate. (Deaton Decl. ¶ 18, Exhibit A-4 and A-5 at 3.)

### III.   KSI's Assignment Of CSRs To Call Center Facilities In Muscle Shoals, Alabama And Orlando, Florida

(**8.**)    Pursuant to a "temp-to-hire" services agreement between KSI and WHI (hereinafter the "Services Agreement"), KSI assigned temporary employees to work for WHI as CSRs at WHI's call center facility in Muscle Shoals, Alabama beginning in July 2007.  (Deaton Decl. ¶¶ 2, 5.)

(**9.**)    From July 2007 to June 14, 2008, KSI assigned approximately 235 temporary employees to WHI's Muscle Shoals facility.  (*Id.* ¶ 19.)

(**10.**)   WHI directly and solely employed its own CSRs at its Muscle Shoals call center but augmented its workforce with KSI's temporary employees.  (*Id.* ¶ 3.)

(**11.**)   The Services Agreement permitted WHI to offer KSI's temporary employees permanent positions with WHI after 90 days of temporary employment with KSI.  (*Id.* ¶ 5.)

(**12.**)   In addition, as an extension to the Service Agreement, KSI's Florida branch assigned temporary employees to work as CSRs for WHI at its call center facility in Orlando, Florida beginning in October 2007.  (Declaration of Cheryl Courier ("Courier Decl.") ¶ 2.)

(**13.**)   KSI's temporary employees supplemented WHI's existing workforce of CSRs employed directly by WHI at the Orlando facility and assigned by other temporary staffing agencies.  (*Id.* ¶ 3.)

(**14.**)    Different KSI personnel operated and managed the Muscle Shoals and Orlando branches, and CSRs at each location interfaced with different personnel from WHI concerning the respective projects.  (*Id.* at ¶ 7; Deaton Decl. ¶ 10.)

(**15.**)    After June 14, 2008, KSI did not employ any CSRs working at WHI's Muscle Shoals facility.  (Deaton Decl. ¶ 19.)  Any KSI former employees working for WHI after this date were WHI's direct and sole employees.  (*Id.*)

(**16.**)    Similarly, after April 2008, KSI did not employ any CSRs working at the Orlando facility.  (Courier Decl. ¶ 4.)

(**17.**)    KSI did not assign any CSRs to WHI facilities in Illinois or Puerto Rico.  (Deaton Decl. ¶ 20.)

## IV.    KSI's Timekeeping Policies And Procedures

(**18.**)    KSI provided all of its temporary employees assigned to work as CSRs in the Muscle Shoals and Orlando facilities with its employee handbook. (Deaton Decl. ¶ 7; Courier Decl. ¶ 5.)

(**19.**)    The employee handbook contains KSI's timekeeping policy, which required KSI's CSRs to accurately record their hours worked – it admonished that they were to record "no more and no less" than the time that they actually worked. (*Id.*)  Additionally, KSI's policy required CSRs to report any customer (*i.e.,* a customer like WHI and/or WHI's representatives) who asked an employee to

record inaccurate hours.  (Deaton Decl., Exhibit A-1; Courier Decl., Exhibit B-1.)

Specifically, the handbook states:

> GETTING PAID
> One of our highest priorities is paying you quickly and accurately.  As long as you submit your time promptly and accurately at the end of your work week, you can expect to get paid by Friday of the following week.
> Usually, you will be paid an hourly rate based on the skills required for each order.  ***You are responsible for promptly and accurately submitting your time.***
>
> ***Report only the hours you worked - no more and no less.*** Never report the time for another employee.  Also, do not record holiday or vacation hours.  If you meet the qualifying criteria for holiday or vacation pay, you will receive it automatically.
>
> Kelly customers may use a variety of timekeeping systems (e.g., paper time cards, card swipe systems, or web-based systems).  Please follow the instructions for submitting your time as explained by your Kelly representative.  A sample paper time card and instructions for using Kelly Web Time are included in the back pocket of this handbook.
>
> PAY POLICY
> Kelly Services is committed to paying our employees timely, accurately, and in compliance with all state and federal laws, including, when applicable, the overtime pay requirements and salary pay requirements of the Fair Labor Standards Act (FLSA).  Employees exempt from overtime will be notified.
>
> ***Contact your Kelly representative to report pay-related errors or if you are asked to report inaccurate hours.***  Kelly will not tolerate retaliation against any employee for reporting pay-related incidents or errors.

(Deaton Decl., Exhibit A-1 at 5, 11) (emphasis added.)

(**20.**)   Moreover, a KSI representative verbally explained its timekeeping and pay policies – including that CSRs must record all hours worked and would be paid for all time recorded – to all temporary employees before they began their assignment.  (Deaton Decl. ¶ 7, 8, Exhibit A-1.)

(**21.**)   KSI temporary employees assigned to WHI's Muscle Shoals facility prepared their own time records by hand, and then signed them to confirm their accuracy.  (Deaton Decl. ¶ 14.)  Then they provided the timecards to WHI's Human Resources Department, which approved and then sent them to KSI for payment.  (*Id.* ¶ 15.)

(**22.**)   Similarly, KSI received handwritten, multiple-entry timecards for its temporary employees assigned to WHI's Orlando facility.  (Courier Decl. ¶ 6.)

(**23.**)   KSI's CSRs included overtime hours worked in their time records and KSI issued payment to its CSRs for all time reported.  (*See*, *e.g.*, Deaton Decl. ¶ 18, Exhibits A-2, A-3, and A-4.)

(**24.**)   KSI began entering the information from these handwritten timecards into an Internet-based system in February 2008.  (*Id.* ¶ 16.)

(**25.**)   KSI did not maintain representatives on-site at the Muscle Shoals or Orlando facilities and had no supervisory or management responsibilities vis-à-vis the daily work of its employees.  (*Id.* ¶ 9; Courier Decl. ¶ 8.)

8

## ARGUMENT

### I.    Standard Of Review

A party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c). Summary judgment is required where a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The non-movant must file affidavits, depositions, or other documents to persuade the Court that there are material facts in the case that must be presented to the jury.  *Webb v. Athens Newspapers, Inc*., 999 F. Supp. 1464, 1466 (11th Cir. 1998).

Because Plaintiff bears the burden of proof at trial, KSI can satisfy its initial burden on summary judgment by either (a) producing evidence negating a material fact, thus demonstrating that Plaintiff will be unable to prove her case at trial; or (b) showing the absence of record evidence to support Plaintiff's case.  *See Fitzpatrick v. City of Atl.,* 2 F.3d 1112, 1115-16 (11th Cir. 1993).  Regardless of which method KSI employs, Plaintiff cannot rest on mere allegations, but must respond with evidence of specific facts sufficient to withstand summary judgment

in KSI's favor.  *See Saxton v. Young*, 479 F. Supp. 2d 1243, 1251-52 (N.D. Ala. 2007) (citing *Lujan* v. *Defenders of Wildlife,* 504 U. S. 555, 561 (1992)).

## II.  KSI Is Entitled To Summary Judgment On Plaintiff's FLSA Claims

### A.  Plaintiff's FLSA Claims Are Barred By The Applicable Two-Year Statute Of Limitations

A claim for a violation of the FLSA's overtime provisions must be commenced within two years of the date the alleged violation occurred.  29 U.S.C. § 255(a).  The irrefutable record evidence establishes that the claims of Plaintiff, Bryan and Thirkill – as well as any and all other potential opt-in putative plaintiffs that KSI at one time employed – are time-barred pursuant to this statutory limitation.

The law is settled that the claims of putative class members are commenced the date they file their consent to opt-into the action.  *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1106 (11th Cir. 1996).  Critically, this means that all potential members of the putative FLSA class that Plaintiff seeks to represent against KSI are time-barred.  *All* such individuals ended their employment with KSI no later than June 14, 2008.  Any otherwise timely claims under the FLSA that they might have filed became stale as of June 14, 2010, by which date none had filed an opt-in consent form.

In addition, Plaintiff filed her complaint on April 5, 2010, which means she must prove that her purported FLSA claim against KSI accrued no earlier than

April 5, 2008 to be actionable.  Yet, her employment with KSI ended on March 22, 2008.  (Facts ¶ 6.)  Similarly, Bryan's and Thirkill's claims against KSI are time-barred because their opt-in forms were filed after the applicable two-year limitations period expired.  Specifically, Bryan's employment with KSI ended April 4, 2008, but she filed her opt-in consent form on May 12, 2010.  (*Id.* ¶ 4.)  Thirkill's employment with KSI ended March 22, 2008, but she filed her opt-in consent form on June 3, 2010.  (*Id.* ¶ 6.)

### B. The Three-Year Statute of Limitations Does Not Apply Because Plaintiff Cannot Establish That KSI Willfully Violated The FLSA

The two-year limitation period applicable to FLSA claims may be extended for an additional year if a plaintiff proves that his or her employer's violations were willful.  *See* 29 U.S.C. § 255(a).  To establish a willful FLSA violation, Plaintiff must show that KSI either knew or "acted with reckless disregard as to whether its conduct was prohibited by the statute."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  Willful conduct is "voluntary, deliberate, intentional, and not merely negligent."  *Id.*  A plaintiff's burden to establish a willful violation is demanding because an employer does not act willfully even if it acts unreasonably in determining whether its practices comply with the FLSA.  *Allen v. Bd. of Public Ed.,* 495 F.3d 1306, 1324 (11th Cir. 2007); *Saxton*, 479 F. Supp. 2d at 1253.

11

Importantly, moreover, "[t]he Eleventh Circuit is hesitant to find willful behavior on the part of employers, even when presented with strong evidence of an employer's violation of the FLSA." *Saxton,* 479 F. Supp. 2d at 1253 (citing *Reich v. Dep't of Cons. and Natural Res., State of Ala.,* 28 F.3d 1076 (11th Cir. 1994)). In *Saxton*, current and former assistant managers filed suit against their employers alleging failure to pay overtime under the FLSA. *Id.* at 1248-49, 1252-54. The employers moved for summary judgment, arguing that because the violations were not willful the two-year statute of limitations applied and barred the plaintiffs' claims. *Id.* at 1252-54. Granting the employers' motion, the court noted that the employers established a policy prohibiting assistant managers from working more than 40 hours weekly and further advised managers that they could be disciplined for noncompliance. *Id.* The court held that the employers' actions could not "be characterized as willful" as a matter of law because they "took affirmative steps to comply" with the FLSA. *Id.* Consequently, several plaintiffs' claims were either entirely or partially time barred under 29 U.S.C. § 255(a). *Id.*

Here, the crux of Plaintiff's Complaint is that KSI violated the FLSA by failing to pay Plaintiff and purported similarly situated CSRs for all hours they worked because they were allegedly required to work 30-45 minutes each day off-the-clock without compensation. (Complaint, Docket No. 1 at ¶¶ 10-16.) But, like the employers in *Saxton* that were deemed to not have willfully violated the FLSA,

KSI took multiple affirmative steps to comply with the FLSA.  For example, KSI promulgated a policy prohibiting its employees from working off-the-clock, instructed its employees verbally and in writing to record *all* time worked on their timecards accurately, and compensated them for all time reported.  (Facts ¶¶ 3, 5, 7, 18-24.)  KSI was entitled to "rely upon the accuracy of [Plaintiff's and its other CSRs'] self-reported work hours."  *See Frew v. Tolt Techs. Serv. Group, LLC*, Case No. 09-CV-49, 2010 U.S. Dist. LEXIS 11991, at *16-*17 (M.D. Fla. Feb. 10, 2010) (citing *Newton v. City of Henderson*, 47 F.3d 746, 749 (5th Cir. 1995)) ("employee's unsupported, post-hoc explanation for not completely reporting his overtime hours, without more, [do] not permit a reasonable inference that the employee actually worked overtime hours that he did not report … [and] cannot negate the reliance an employer reasonably places on an employee's self-reported work hours") (citations omitted)).  Certainly KSI's reliance on those records does not, under the circumstances of this case, demonstrate a knowing violation of or a deliberate disregard for the FLSA.

An employer's reliance on its employees' self-recorded time records is particularly appropriate when, as here, employees do not work on-site with their employer where the employer can monitor their hours.  *See Kuebel v. Black & Decker (U.S.) Inc.*, Case No. 08-CV-6020, 2010 U.S. Dist. LEXIS 46533 (W.D.N.Y. May 12, 2010).

In *Kuebel,* for example, the plaintiff alleged that his employer willfully failed to compensate him for hours worked off-the-clock. *Id.* at *30-*31. The court held that the plaintiff could not carry his burden of proving his employer willfully violated the FLSA, or the underlying violation itself, because the employer "maintained a policy consistent with the law of compensating [its employees] for all time worked" and paid the plaintiff "for all the overtime he recorded during his employment." *Id.* at *52-*53. Additionally, the court specifically stated that "due to the nature of plaintiff's job as [an off-site] employee, defendant has to rely on the accuracy of plaintiff's self-reported working hours." *Id.* at *53.

Here, just as in *Kuebel,* KSI managers did not work on-site at WHI's facilities where they could monitor the hours worked by KSI's temporary employees. (Facts ¶ 25.) Moreover, the record evidence establishes that KSI compensated Plaintiff, Bryan and Thirkill at the applicable overtime premium rate for all hours they reported over 40 in a week. (*Id.* ¶ 3, 5, 7.)

Finally, Plaintiff's allegation that the "applicable statute of limitations governing FLSA actions … is tolled for as long as Defendants engaged or engage in the fraudulent and misleading conduct … which is a period of at least ten (10) years" has no legitimate basis. (Complaint, Docket No. 1 at ¶ 28.) Plaintiff has not (and cannot) alleged any facts and there is no evidence to support her

14

allegations of misleading or fraudulent conduct on KSI's part, for the reasons noted above, including that Plaintiff and putative collective action members prepared their time sheets themselves.  (*See* Facts, ¶¶ 18-23.)  Moreover, the undisputed record evidence establishes that KSI did not begin assigning CSRs to WHI until July 2007, which means there is no legitimate basis for Plaintiff's attempt to toll the statute of limitations for ten years.  (*See* Facts ¶¶ 9, 12.)

In sum, the foregoing case law and irrefutable record evidence foreclose Plaintiff's ability to meet her burden of showing KSI willfully violated the FLSA and compel the conclusion that the two-year limitations period applies here.

## III.   Plaintiff's "Outrage" Claim Fails As A Matter Of Law

Plaintiff asserts in a conclusory fashion that KSI is liable for the tort of outrage because (she asserts) it "intentionally and repeatedly misrepresented the true time worked by their [CSRs] … to avoid suspicion and inquiry by employees regarding their entitlement to monies owed to them."  (Complaint, Docket No. 1 at ¶ 7.)  This claim has no merit whatsoever.

To state an outrage claim under Alabama law, a plaintiff must establish each of the following elements:  (1) the defendant intended to inflict emotional distress, or knew or should have known, that emotional distress was likely to result from its conduct; (2) the defendant's conduct was extreme and outrageous; and (3) the distress the plaintiff suffered was severe.  *Wiggins v. Risk Enter. Mgmt. Ltd.,* 14 F.

Supp. 2d 1279 (M.D. Ala. 1998) (citing *Moore v. Spiller Assoc. Furniture, Inc.,* 598 So. 2d 835 (Ala. 1992)); *American Road Serv. v. Inmon,* 394 So. 2d 361, 365 (Ala. 1980) (conduct must "go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.").

The Alabama Supreme Court has described this tort as "a very limited cause of action that is available only in the most egregious circumstances." *Thomas v. BSE Indus. Contractors, Inc.,* 624 So. 2d 1041, 1044 (Ala. 1993). Indeed, the Alabama Supreme Court has found a jury question on an outrage claim in only three extreme categories of cases: (a) cases involving "wrongful conduct in the context of family burials"; (b) "cases where insurance agents employed heavy-handed, barbaric means to coerce a settlement"; and (c) "cases involving egregious sexual harassment." *Horne v. Russell County Comm'n,* 379 F. Supp. 2d 1305, 1339-40 (M.D. Ala. 2005) (citing *Thomas,* 624 So. 2d at 1044).

Here, Plaintiff's outrage claim does not arise from allegations that come anywhere close to these categories of conduct, and she cannot possibly identify any facts that are so outrageous and extreme as "to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Inmon,* 394 So. 2d at 365.

Indeed, Plaintiff bases her outrage claim upon her unfounded assertion that KSI somehow misrepresented to its employees the actual hours they worked –

hours those employees self-reported to KSI and for which they received corresponding payments.  (Complaint, Docket No. 1 at ¶ 27.)  Her theory that this alleged conduct is the sort of extreme and atrocious anti-social conduct the outrage tort contemplates is implausible and research has not yielded any cases where the Alabama Supreme Court has found this applicable to wage-and-hour violations.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, KSI respectfully requests that the Court enter summary judgment in its favor and grant it its attorneys' fees, costs, all other relief it deems just.

**DATED: July 12, 2010**

Respectfully submitted,

KELLY SERVICES, INC.


By___/s/ Gerald L. Maatman, Jr.___
        One of Its Attorneys

| | |
|---|---|
| Gerald L. Maatman, Jr. | Thomas L. Oliver, II |
| Brett C. Bartlett | Bricker S. Daughtry |
| Steven J. Pearlman | CARR ALLISON PC |
| Brandon L. Spurlock | 100 Vestavia Parkway, Suite 200 |
| (appearing *pro hac vice*) | Birmingham, AL 35216 |
| SEYFARTH SHAW LLP | 205-949-2914 |
| 131 South Dearborn Street, Suite 2400 | |
| Chicago, IL 60603 | |
| 312-460-5000 | |

*Attorneys For Defendant Kelly Services, Inc.*

17

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this July 12, 2010, I caused a copy of the foregoing DEFENDANT

KELLY SERVICES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION

FOR SUMMARY JUDGMENT to be served upon the following counsel of record by the

Court's Electronic Filing System, which would then electronically notify the following CM/ECF

participants on this case:

Robert L. Wiggins, Jr.
*gwiggins@wcqp.com*
Greg Wiggins
*rwiggins@wcqp.com*
Susan Donahue
*sgd@wcqp.com*
WIGGINS, CHILDS, QUINN &
PANTAZIS, LLC
The Kress Building
301 19th Street North
Birmingham, AL 35203
205-254-1500

Michael L. Weathers
*michael.l.weathers@comcast.net*
114 W. Dr. Hicks Blvd.
Florence, AL 35630
256-764-1318

***Attorneys For Plaintiff Jessica H. Feeney***

John R. Carrigan
*richard.carrigan@odnss.com*
J. Trent Scofield
*trent.scofield@odnss.com*
Veronica L. Merritt
*veronica.merritt@odnss.com*
OGLETREE DEAKINS NASH SMOAK &
STEWART PC
One Federal Place, Suite 1000
1819 5th Avenue North
Birmingham, AL 35203
205-328-1900

***Attorneys For Defendant Walgreen Health
Initiatives, Inc.***

/s/ Gerald L. Maatman, Jr.
Gerald L. Maatman, Jr.